72 P.3d 531

**Suzanne Lynette BIENVENUE, Plaintiff–Appellee,**

v.

**Michael Roger BIENVENUE, Defendant–Appellant.**

**No. 24509.**

Intermediate Court of Appeals of Hawai'i.

June 3, 2003.

As Amended June 27, 2003.

J.E. Mayla Blakley, on the briefs, Honolulu, for defendant-appellant.

Robert M. Harris, Associate Judge, on the briefs, Honolulu, for plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Michael Roger Bienvenue (Michael) appeals from the June 13, 2001 "Decree Granting Absolute Divorce" (Divorce Decree) entered by Judge Darrel Y.C. Choy.

Michael presents the following two points on appeal.

The Court erred in not either dismissing the case or limiting the issues given its lack of personal jurisdiction over [Michael] who was not a resident of Hawaii, not served in Hawaii and lacked sufficient con-

tacts with Hawaii to require him to defend an action so far from his New Jersey home.

The Court abused its discretion in entering [Plaintiff–Appellee Suzanne Lynette Bienvenue's (Suzanne) ] proposed Decree Granting Absolute Divorce, where it contained multiple provisions which were not part of the parties' settlement agreement; which were not placed on the record when the parties recited their settlement; and which were vehemently objected to by [Michael].

Michael's first point has no merit. His second point has some merit. We vacate in part, affirm all other parts, and remand with instructions for further action.

## BACKGROUND

Michael and Suzanne were married on August 20, 1981. Their son was born on December 25, 1981.

On April 29, 1994, Michael and Suzanne entered into a Separation Agreement. Included therein were the following agreements:

### PERSONAL PROPERTY DIVISION

Attachment 1 to this Separation Agreement ... reflects the parties' fair and equitable division of their personal property, and is specifically incorporated in and made a part of of [sic] this Separation Agreement.

. . . .

Henceforth, each of the parties shall own, have, and enjoy independently of any claim or rights of the other party, all items of personal property of every kind, nature, and description and wheresoever situated, which are now owned or held by or which may hereafter belong to the parties, with full power to each party to dispose of the same as fully and effectively, in all respects and for all purposes, as if he or she were unmarried.

. . . .

### RETIREMENT BENEFITS

Upon the retirement of [Michael] from active duty in the United States Armed Forces, [Michael] agrees to pay [Suzanne] $300.00 of his military retirement pay each month, until the death of either party. It is the intention of the parties that this provision be mutually binding in the event of any subsequent divorce proceedings in any State.

On September 30, 1995, Michael retired from the military. There is no evidence that Suzanne was enrolled in a Survivor's Benefit Plan.

On May 12, 1999, Suzanne filed a "Complaint for Divorce." On January 25, 2000, Suzanne filed an amended complaint for divorce and obtained a court order permitting service "by registered or certified mail with return receipt requested[.]" Michael was served by mail in New Jersey on February 1, 2000.

On March 7, 2000, Suzanne filed a "Motion for Entry of Default" for failure to file an answer or to appear in the case. On May 15, 2000, after a hearing on April 6, 2000,[1] Judge Christine Kuriyama entered an "Order Granting Plaintiff's Motion for Entry of Default" as follows:

1. This Court has jurisdiction in this matter, and therefore, Defendant's oral motion to dismiss the case is DENIED;

2. Plaintiff's Motion for Entry of Default is granted subject to Defendant filing an answer to the Complaint for Divorce within twenty (20) days from the date this order is filed;

3. In the event Defendant fails to timely file his answer, default shall be entered and Plaintiff may proceed with the matter on the uncontested divorce calendar[.]

This order indicates that Michael was represented at the April 6, 2000 hearing by attorney J.E. Mayla Blakley. At all times thereafter in the case, Michael was represented by attorney Blakley.

On May 25, 2000, Michael filed a "Motion for Reconsideration" seeking clarification re-

1. A transcript of the April 6, 2000 hearing is not part of the record on appeal.

garding the court's conclusion that "it had jurisdiction in this matter," which

> merely reflects the presence of subject matter jurisdiction over the issue of granting a divorce, a ruling on which Defendant would not seek reconsideration, or holds that the court has personal and child-related jurisdiction, in which case Defendant requests the Court to reconsider that portion of its decision.

The motion was supported only by a *"DEC-LARATION OF COUNSEL"* signed by a "M. TYLER POTTENGER for J.E. MAYLA BLAKLEY, Attorney for Defendant."

On June 5, 2000, Michael filed an answer challenging the family court's personal jurisdiction over him.[2]

On August 25, 2000, Judge Kuriyama entered an "Order Denying Motion for Reconsideration Filed May 25, 2000 and Plaintiff's Written Response to Defendant's Motion for Reconsideration Filed June 5, 2000." The order did not address the question that was asked in the motion.

On October 9, 2000, Michael filed his "First Amended Answer to Complaint for Divorce and First Amended Complaint for Divorce" in which he: (a) denied

> that he has lived in the State of Hawaii for a continuous period of at least six (6) months and have [sic] been physically present on the island of Oahu fora [sic] continuous period of at least three (3) months immediately preceding the filing of [the] Complaint; he is without sufficient knowledge to know if [Suzanne] has meets [sic] these residence criteria[;]

(b) asserted sundry "affirmative defenses";[3] and (c) requested the following:

> 1. [Suzanne] be required to reimburse [Michael] for former child support and child medical and other bills as per the parties' agreement; . . .

> 2. [Michael] be awarded attorney's fees and costs;

> 3. An equitable distribution of marital partnership property be made as per the parties['] prior agreements; [and]

> 4. [Michael] be awarded such other and further relief as the court deems just and proper.

On November 6, 2000, Suzanne filed a "Motion to Set and Notice of Motion." Attached to the motion was Suzanne's position statement in the form of a proposed decree granting absolute divorce (proposed decree). Suzanne's proposed decree provided that she should be awarded $300 per month of Michael's retirement pay. It also included a provision entitled, *"Separate Property/Release,"* which provided that except as otherwise noted in the decree, all separate property of each of the parties was awarded to him or her respectively, and that each of the parties released the other from any claims which either might have against the other.

On December 20, 2000, in the form of a response to Suzanne's proposed decree, Michael filed his position statement stating, in relevant part, as follows:

> 12. ***RETIREMENT.***
>
> A. *[MICHAEL'S] RETIREMENT.* . . . [Michael] agrees that [Suzanne] is entitled to $300 monthly as per their Separation Agreement. (This amount is not far from the amount which would be yielded by application of the proportional formula.) [Suzanne] may, if she wishes and if same is available under these conditions and at this time, elect the survivorship beneficiary package so long as she is solely responsible for any costs associated therewith.
>
> [Michael] does not, however, agree with many of the provisions included in [Suzanne's] proposed Decree/Position Statement which, . . . third, vest permanent per-

---

2. In his answer, Defendant–Appellant Michael Roger Bienvenue (Michael) stated: "Hawaii lacks in personam jurisdiction over [Michael]. He is not a resident of Hawaii, does not live in Hawaii, was not served in Hawaii, and had not acceded or agreed to Hawaii having jurisdiction over him."

3. Among the "affirmative defenses" asserted were: failure to state a claim upon which relief can be granted, waiver, estoppel, laches, unclean hands, statute of limitations, and failure to join indispensable parties. The assertion of these "affirmative defenses" was not a waiver by Michael of his jurisdictional objection. *Romero v. Star Markets, Ltd.*, 82 Hawai'i 405, 416, 922 P.2d 1018, 1029 (1996).

sonal jurisdiction in the State of Hawaii, ... fourth, that permit the court to recharacterize the retirement obligation as one of alimony; fifth, fail to specify that [Suzanne] is responsible for all taxes on amounts received by her; and sixth, include cost for annuity, i.e., survivorship beneficiary (SB), among the amounts to be deducted before arriving at the gross retirement income for division, thus improperly having [Michael] pay for one-half of the SB package.

### 13. *OBJECTION TO ADDITIONAL PROVISIONS IN [SUZANNE'S] POSITION STATEMENT*

A. *"SEPARATE PROPERTY/RELEASE"*. [Michael] objects to this provision as it awards property without the other party having any knowledge of its existence or identity. The awarded property should be specified and should consist of those things which each party discloses.[4]

. . . .

2) *Continuing Jurisdiction Provision.* [Michael] objects to the provision seeking continuing jurisdiction. It is his position that any jurisdiction determination should be consistent with the law and the residence of the parties as they exist at the time of any subsequent filing.

(Footnote added.)

On January 5, 2001, after a January 4, 2001 hearing on a motion to set conference attended by the attorneys for both parties, Judge Paul Murakami entered "Pretrial Order No. 1" stating the issues in dispute and not in dispute. This order noted that neither of the parties had any real property. It also noted that there was no dispute regarding the division and distribution of any personal property other than "retirement."

There was a settlement conference on April 19, 2001. The transcript of that conference reports that counsel for Michael advised the court, in relevant part, as follows:

[COUNSEL FOR MICHAEL]: Okay. My understanding is the parties have agreed to resolve this divorce ... with the following terms.... There's no marital real property. There's no joint debts.

Each party pays his or her own debts. There's no alimony order. And there are no minor children....

The parties have agreed to resolve on the following additional terms: My client receives retirement from his military service. [Suzanne] will in fact get her Linsen [sic] share of that which we believe is approximately ... 35 percent.... That will be paid directly to [Suzanne] through the military, we believe.

[Michael] agrees to jurisdiction of this court for that purpose and for the purposes of the divorce being granted....

. . . .

[COUNSEL FOR MICHAEL]: ... [Michael] will be ... responsible for taxes on the share of the retirement that he actually receives, and [Suzanne] will be responsible for shares she actually receives.

[COUNSEL FOR SUZANNE]: That's correct.

THE COURT: That's correct.

On April 20, 2001, Judge Choy entered an "Order Re: Settlement Conference" stating, in relevant part: "SETTLEMENT PLACED ON THE RECORD—UDA [UNCONTESTED DIVORCE AGREEMENT] DOCUMENTS TO BE SUBMITTED TO JUDGE CHOY WITHIN 20 DAYS." On June 13, 2001, Judge Choy entered the Divorce Decree prepared by counsel for Suzanne.

On June 25, 2001, Michael filed a "Motion for Reconsideration." The accompanying "Declaration of Counsel" states, in relevant part, as follows:

2. Throughout this matter, [Michael] had objected to the Hawaii Court's exertion of personal jurisdiction over him.

. . . .

3. [Michael's] voluntary consent to jurisdiction was necessary for the military to enforce any orders by the Hawaii court dividing his military retirement.

. . . .

6. The Decree, submitted by [counsel for Suzanne] and signed by the Court,

---

4. There is no indication on the record that Michael sought discovery of this information.

includes multiple terms to which [Michael] never agreed and which are not standard terms designed to protect both sides equally. A comparison of the parties' Position Statements will show that, either these matters were at issue and thus should have been specified were they to be included, OR were not even directly requested by Plaintiff's Position Statement.

There was no hearing on this motion. On August 3, 2001, Judge Choy entered an "Order Denying Defendant's Motion for Reconsideration Filed June 25, 2001."

On August 24, 2001, Michael appealed "from the Decree Granting Absolute Divorce, entered on June 13, 2001." [5]

## DISCUSSION

### A.

The requirements for the family court to have subject matter jurisdiction over the termination of the marriage are specified in Hawaii Revised Statutes (HRS) § 580-1 (1993) [6] and discussed in *Puckett v. Puckett*, 94 Hawai'i 471, 16 P.3d 876 (2000).

The alternative requirements for the family court to enter a personal judgment against an absent defendant in a divorce case are specified in HRS § 580-3.5 (1993) [7]. It appears that with respect to Michael in this case, none of these alternative requirements were satisfied.

■ Michael, however, performed acts changing his status from absent defendant to participating party, supporting the conclusion that the family court had personal jurisdiction over Michael commencing no later than October 9, 2000, when Michael filed his "First Amended Answer to Complaint for Divorce and First Amended Complaint for Divorce" in which he (1) did not question or admit the family court's subject matter jurisdiction to terminate the marriage but questioned the family court's personal jurisdiction over him [8] and (2) asked the family court to enforce the parties' Separation Agreement and enter other substantive orders in his

---

5. The fact that Michael did not appeal from the August 3, 2001 "Order Denying Defendant's Motion for Reconsideration Filed June 25, 2001" does not preclude him from challenging, in this appeal, errors in the "Decree Granting Absolute Divorce" entered on June 13, 2001.

6. Hawaii Revised Statutes (HRS) § 580-1 (1993) states as follows:

Exclusive original jurisdiction in matters of annulment, divorce, and separation, subject to section 603-37 as to change of venue, and subject also to appeal according to law, is conferred upon the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least six months next preceding the application therefor. A person who may be residing on any military or federal base, installation, or reservation within the State or who may be present in the State under military orders shall not thereby be prohibited from meeting the requirements of this section.

7. HRS § 580-3.5 (1993) states as follows:

In any proceeding in the family court, the court shall have the power to render a personal judgment against a party who is outside of this State and over whom jurisdiction is ac-

quired by service of process in the manner set forth in section 580-3(b) or (c), if the party was personally served with a copy of the summons or order to show cause and complaint or other pleading upon which the judgment is based and if the party was a domiciliary of this State (1) at the time that the cause of action which is the subject of the proceeding arose, or (2) at the time of the commencement of the proceeding, or (3) at the time of service.

8. In his October 9, 2000 "First Amended Answer to Complaint for Divorce and First Amended Complaint for Divorce," Michael responded to Suzanne's allegation that

I and/or my spouse, the Defendant, have lived or have been physically present in the State of Hawai'i for a continuous period of at least six (6) months *and* I have lived and/or been physically present on the Island of O'ahu for a continuous period of at least three (3) months immediately preceding this application[,]

by stating that

[Michael] denies that he has lived in the State of Hawaii for a continuous period of at least six (6) months and have [sic] been physically present on the island of Oahu for a [sic] continuous period of at least three (3) months immediately preceding the filing of [the] Complaint; he is without sufficient knowledge to know if [Suzanne] has meets [sic] these residence criteria.

(Emphasis in original.)

favor. *Hanalei, BRC Inc. v. Porter,* 7 Haw. App. 304, 312, 760 P.2d 676, 681 (1988) ("where a defense of lack of personal jurisdiction is joined with a permissive counterclaim or a voluntary affirmative claim, the defense is waived.")

The court's personal jurisdiction over Michael was further established when, at the settlement conference on April 19, 2001, counsel for Michael advised the court as follows:

Okay. My understanding is the parties have agreed to resolve this divorce … with the following terms: … There's no marital real property. There's no joint debts. Each party pays his or her own debts. There's no alimony order. And there are no minor children. …

The parties have agreed to resolve on the following additional terms: My client receives retirement from his military service. [Suzanne] will in fact get her Linsen [sic] share of that which we believe is approximately … 35 percent. … That will be paid directly to [Suzanne] through the military, we believe.

[Michael] agrees to jurisdiction of this court for that purpose and for the purposes of the divorce being granted.

When Michael agreed to the family court's personal jurisdiction over him to divide and distribute some of his property, the family court thereby acquired personal jurisdiction over him to divide and distribute all of his property.

**B.**

In this case, (1) Suzanne filed a proposed decree; (2) Michael expressly disagreed with specific provisions in Suzanne's proposed decree; (3) after a hearing on a motion to set attended by the attorneys for both parties, the court entered an order noting that there was no dispute regarding the division and distribution of any personal property other than "retirement"; (4) the parties stated on the record, and the family court approved, a final settlement agreement resolving the case; (5) in the final settlement agreement, the parties expressly resolved some issues created by Michael's express disagreements and did not expressly reserve the final divi-

sion of any property of the parties for further hearing, decision, and order; and (6) the family court entered a divorce decree containing more details regarding the division and distribution of the personal property.

In this appeal, the question is whether the family court was authorized to insert some of those additional details in the Divorce Decree. The disputed additional details are printed below in italics and the emphasized portions in the original are printed below in bold.

5. *Retirement Funds.*

a) *Plaintiff's TSP and FERS.* Plaintiff shall be awarded as her sole and separate property her Federal Thrift Savings Plan and Federal Employees Retirement System benefits, and Defendant hereby waives any claim he may have thereto, provided that Plaintiff pay the sum of $150.00 to Defendant, as referenced in the paragraph hereinbelow entitled, "Final Settlement Payment".

b) *Defendant's Military Retirement. As soon as allowed by law, Defendant (hereinafter referred to as "Service Member") shall irrevocably enroll in the Survivor's Benefit Plan electing the highest level of basic allowable benefits thereunder, and he shall irrevocably designate Plaintiff as the beneficiary of said benefits, for so long as Plaintiff (hereinafter referred to the "Non–Service Member") shall live.*

*The Service Member shall continue his enrollment in the Survivor's Benefit Plan* **(hereinafter referred to as "SBP") and he shall designate the Non–Service Member as the beneficiary of said benefits, for** *so long as the Non–Service Member shall live.*

**The Non–Service Member is elibigle [sic] for the SBP coverage and, should she so elect it, the Service Member shall have the SBP premiums automatically deducted from his entire retired/retainer benefit to realize a tax savings for both parties. The Non–Service Member shall be responsible for the cost of her premiums for said SBP benefits, and shall reimburse the Service Member directly**

*upon his presentation of proof of payment of said SBP premiums. The Non–Service Member's reimbursement of said premiums shall commence upon her receipt of the first payment she receives from the Service Member's retirement. The Service Member shall be solely responsible for any SBP premiums that may have been delinquent prior to the entry of this Divorce Decree, if any.*

Beginning the first (1st) day of the first (1st) month after the effective date of divorce and continuing for so long as both parties shall live, the [Non–Service Member] ... shall receive a portion of each payment of military disposable retired or retainer pay to which [the Service Member] ... is entitled.

The Non–Service Member's monthly percentage share shall be **thirty-five percent (35%)** as has been determined by the following formula:

The Non–Service Member's portion of each payment of disposable retired or retainer pay shall be "X" in the following formula, in which "M" is the total number of years of the marriage which were also years credited to the Service Member for retirement purposes, "Y" is the total number of years credited to the Service Member for retirement purposes, and in which "DRRP" equals the payment of disposable retired or retainer pay to be divided.

$$X = [.5][M/Y] [DRRP]$$

Disposable retired or retainer pay is defined by Title 10, United States Code Section 408(a)(4), and for these purposes shall be the gross retired or retainer pay to which the Service Member is entitled less only amounts which:

(1) are owed by the Service Member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

(2) are deducted from the retired pay of the Service Member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under Title 5 or 38, U.S.C.;

(3) in the case where the Service Member is entitled to retired pay under Chapter 61 of Title 10, U.S.C., an amount which is equal to the amount of retired pay of the Service Member under that Chapter computed using the percentage of the Service Member's disability on the date when the Service Member was retired (or the date on which his (the Service Member's) name was placed on the temporary disability retired list); or

(4) are deducted because of an election under 10 U.S.C. 1431 *et seq.* to provide annuity to the Non–Service Member or a former spouse to whom payment of a portion of the Service Member's retired pay is being made pursuant to a court order.

If other deductions from gross monthly retired or retainer pay are made, the Non–Service Member's portion of each payment of disposable retired or retainer pay shall be increased so that the Non–Service Member receives what she would have received had those other deductions not occurred.

*The Service Member has agreed not to merge his retired pay with any other pension, nor to waive any portion of his retired pay in order to receive disability pay. He has further agreed not to pursue any course of action, which would defeat, reduce or limit the Former Spouse's right to receive her share of the Service Member's retired pay as ordered herein. The Service Member further agrees that if there is any diminution, deduction or cessation of the amount paid to the Non–Service Member hereunder, due to an act or omission of the Service Member, then he shall personally pay directly to the Non–Service Member the exact amount which is not being paid directly to her by the United States Navy (branch of service) and the Service Member is designated as a constructive trustee in that regard.*

*Specifically, the Service Member has further agreed to indemnify the Former Spouse for any breach of this provision by himself by paying personally and directly to the Former Spouse (Non–Service Member) the difference between the initial percentage or amount of the marital portion*

*of the Service Member's net disposable retired pay which was originally allocated to the Non–Service Member prior to any reduction thereof, and the reduced percentage or amount which is paid to the Non–Service Member subsequent to any breach or other change thereof which was caused by an act of the Service Member.*

The parties were married on *August 20, 1981,* physically separated on *January 4, 1994* and the Service Member retired on *September 30, 1995,* with a service period of *fourteen* years (*14*) overlapping marriage during which time the Service Member performed creditable military service in the United States Navy. The Service Member began service creditable in determining his eligibility for retainer/retired pay on *September 27, 1975,* and performed continuous creditable service until his retirement on *September 30, 1995,* for a total of *20* years. All of his service was with the United States Navy.

The Service–Member's full name, address and social security number are: MICHAEL ROGER BIENVENUE....

The Non–Service Member's full name, address and social security number are: Suzanne Lynette Bienvenue....

The United States Government shall directly pay the Non–Service Member her portion of the Service Member's disposable retired or retainer pay. Under the terms of the Uniformed Services Former Spouses' Protection Act, as amended, the United States Government as the paying authority is required to pay the Non–Service Member her monthly percentage share of the Service Member's monthly disposable military retired/retainer pay because of the following: in the course of the parties' marriage, the Service Member performed at least ten (10) years of service creditable in determining his eligibility for retired/retainer pay.

In the event that the United States Government will not directly pay the Non–Service Member all she is entitled to under this Section, the Service Member shall immediately make payment to the Non–Service Member of her portion of his disposable retired or retainer pay as soon as he receives it.

When the Service Member receives his annual statement of his retired or retainer pay, he shall promptly send the Non–Service Member a copy.

The Family Court has jurisdiction over the Service Member's disposable retired or retainer pay pursuant to the Uniformed Services Former Spouses Protection Act of 1982, *as amended.*

(1) Pursuant to Section 580–47 of the Hawaii Revised Statutes the Service Member's disposable retired or retainer pay is subject to equitable division upon divorce; and

(2) Pursuant to Section 580–1 of the Hawaii Revised Statutes the Family Court has jurisdiction to divide property incident to divorce; and

(3) The Service Member has been afforded his rights under the Soldiers and Sailors Civil Relief Act of 1940.

(4) The Service Member has his residence, other than because of military assignment, in the territorial jurisdiction of the Court and/or

(5) The Service Member is domiciled in the territorial jurisdiction of the court and/or

(6) The Service Member has consented to the jurisdiction of the court.

*If, at any time after he retires, the Service Member voluntarily causes a reduction in his gross retired or retainer pay, and thereby deprives the Non–Service Member of a part or all of her benefits conferred by this Section, the Service Member shall be deemed to have created a constructive trust for the Non–Service Member's benefit under Federal and all applicable State law. The Family Court shall have continuing jurisdiction to enforce the trust, and make all orders necessary to implement the trust.*

*The Court shall retain jurisdiction over the Service Member's military retired/retainer pay for so long as the parties both shall live. The Court shall also have the authority to make every just and equitable order not inconsistent with the other pro-*

visions herein, and not inconsistent with the Uniformed Services Former Spouses' Protection Act, as amended, or any other applicable law. The Court shall also have specific authority to make any orders it deems just and equitable as a result of the income tax consequences which flow from the division and distribution of the retired/retainer pay.

The Court shall also have continuing jurisdiction to make every order reasonably necessary to implement and accomplish the direct payment to the Non–Service Member by the Service Member or, if permitted by law, the United States Government, of her percentage share of the Service Member's military retired/retainer pay, including the right to advise the Service Member or the United States Government of the precise amount or percentage of the Service Member's disposable military retired/retainer pay to be payable to the Non–Service Member.

The Family Court of the First Circuit shall retain jurisdiction over all of the matters as described in this section so as to insure the full completion of and compliance with the provisions of this agreement ongoing for so long as the parties both shall live. This shall include retention of personal jurisdiction over both the parties hereto as well as retention of ongoing subject matter jurisdiction over the retirement plan(s), and both the parties hereto irrevocably consent to same. This shall specifically include but not be limited to making any amendments to the provisions contained herein which may be required by the administrators of the Retirement Plan(s) described herein as a pre-requisite to commencing payment of benefits due to the Non–Service Member. Any such amended orders shall be deemed to be in the nature of enforcement proceedings as opposed to subsequent property division. The Court shall also have the authority to make every just and equitable order not inconsistent with the other provisions herein, and not inconsistent with any other applicable law. The Court shall also have specific authority to make any orders it deems just and equitable as a result of the income tax or other conse-

quences which flow from the division and distribution of the retirement pay. Furthermore, this retention of jurisdiction by the Family Court of the First Circuit shall include but not be limited to the Court's ability to recharacterize the division of any retirement awards which are initially made in favor of a Non Service Member but which are not ultimately received by the said Non–Service Member; or which are not honored, paid or enforced by the Service Member and/or his retirement plan, and/or said plan's administration. The said recharacterization may include but not be limited to the Court's ability to ex post facto either: enter an award of alimony and/or to order the reconfiguration or reallocation of other assets so as to place the Non–Service Member in a position equal to that she would have been if she actually received her retirement share as originally ordered.

Neither Plaintiff nor Defendant will do or cause to be done any act which will cause this provision to be null and void and this order shall be the final order pertaining to division of the Service Member's military retired/retainer pay.

. . . .

10. Separate Property/Release. Except as is otherwise specifically provided herein, all the separate property of Plaintiff, of whatever nature, including but not limited to any and all separately titled instruments, policies, accounts, deposit accounts, etc., shall remain the sole and separate property of Plaintiff, and Defendant shall have no claim to these said items; likewise, all the separate property of Defendant, of whatever nature, including but not limited to any and all separately titled instruments, policies, accounts, deposit accounts, etc., shall remain the sole and separate property of Defendant, and Plaintiff shall have no claim to these said items. Any and all other property not specifically distributed under the terms of this Decree shall be awarded to its legal owner.

Except as may be otherwise herein provided, both Plaintiff and Defendant do hereby fully release, hold harmless and

discharge one another of and from all claims which either of them may have, or at any time may claim against the other, including but not limited to any and all claims and/or demands of every kind and character whatsoever which either party may have had, or may have as of this date, against one another whether growing out of their relationship as Husband and Wife or otherwise. This mutual release includes any and all claims by either party in and/or to any money, property right or interest of value of any nature whatsoever now or hereafter owned or acquired by the other party.

. . . .

13. *Debts.*

. . . .

c) *Indemnification. The party responsible for a debt shall indemnify and hold the other party harmless from any and all liability arising from the non-payment of the debt and shall reimburse the other party for any costs, charges or attorney's fees incurred as a result of the non-payment. If either party subsequently becomes bankrupt and in doing so deprives the other party of property or benefits conferred hereunder, the bankrupt party shall pay the other party such amounts as are necessary to put the non-bankrupt party in a position as favorable as he or she would have otherwise enjoyed under the terms of this Agreement. Said payment shall be in such form, including alimony, as the non-bankrupt party shall elect, and if elected as alimony shall not be subject to the alimony termination provisions included elsewhere herein. The exclusive future use of each existing joint credit or charge account shall be awarded to the principal account holder as of the effective date of this Agreement, as determined by the credit giver, and the other party shall no longer use the account. Otherwise, each party shall destroy every credit card and like instrument in his/her possession which could create indebtedness on the part of the other party.*

1.

Michael challenges the parts of the Divorce Decree pertaining to a Survivor Benefit Plan (SBP), 10 USCS §§ 1447–1455 (2001), for Suzanne's benefit. Specifically, Michael challenges the part of subsection 5.b of the Divorce Decree stating:

**The Non–Service Member is eligible for the SBP coverage and, should she so elect it, the Service Member shall have the SBP premiums automatically deducted from his entire retired/retainer benefit to realize a tax savings for both parties. The Non–Service Member shall be responsible for the cost of her premiums for said SBP benefits, and shall reimburse the Service Member directly upon his presentation of proof of payment of said SBP premiums. The Non–Service Member's reimbursement of said premiums shall commence upon her receipt of the first payment she receives from the Service Member's retirement. The Service Member shall be solely responsible for any SBP premiums that may have been delinquent prior to the entry of this Divorce Decree, if any.**

(Emphases in original.)

We agree with Michael's challenge. In his position statement, Michael stated, in relevant part, as follows:

12. *RETIREMENT.*

A. *[MICHAEL'S] RETIREMENT.* . . . [Suzanne] may, if she wishes and if same is available under these conditions and at this time, elect the survivorship beneficiary package so long as she is solely responsible for any costs associated therewith.

[Michael] does not, however, agree with many of the provisions included in [Suzanne's] proposed Decree/Position Statement which, . . . fifth, fail to specify that [Suzanne] is responsible for all taxes on amounts received by her; and sixth, include cost for annuity, i.e., survivorship beneficiary (SB), among the amounts to be deducted before arriving at the gross retirement income for division, thus improp-

erly having [Michael] pay for one-half of the SB package.

(Emphases in original.)

The Divorce Decree states, in relevant part, that

[t]he Non–Service Member is eligible for the SBP coverage and, should she so elect it, the Service Member shall have the SBP premiums automatically deducted from his entire retired/retainer benefit to realize a tax savings for both parties. The Non–Service Member shall be responsible for the cost of her premiums for said SBP benefits, and shall reimburse the Service Member directly upon his presentation of proof of payment of said SBP premiums. The Non–Service Member's reimbursement of said premiums shall commence upon her receipt of the first payment she receives from the Service Member's retirement. The Service Member shall be solely responsible for any SBP premiums that may have been delinquent prior to the entry of this Divorce Decree, if any.

(Emphases in original.)

In other words, the Divorce Decree requires Michael to pay for the SBP premiums via automatic deduction from his monetary retirement benefit and then to seek reimbursement from Suzanne by "presentation of proof of payment of said SBP premiums." The fact that Suzanne's duty to pay "shall commence upon her receipt of the first payment she receives from [Michael's] retirement" does not change Michael's duties.

In his response to Suzanne's proposed decree, Michael expressly disagreed with having the SBP to the extent that he was required to pay for any of it. The issue resulting from that disagreement was never settled. The final agreement stated on the record did not mention the SBP. Michael did not agree (1) to advance the SBP payments for Suzanne's benefit or (2) to have the burden to seek reimbursement of those advanced payments from Suzanne. It follows that the family court was not authorized to insert those provisions in the Divorce Decree.

On the other hand, the record permits the Divorce Decree to award Suzanne the benefit of the SBP so long as Michael is assured of not having to pay anything for it. For example, the family court may award the benefit of the SBP to Suzanne as long as Suzanne advances the cost of it to Michael before that cost is deducted from Michael's monetary benefit.[9]

### 2.

■ There is no evidence of a factual basis for, or prejudice caused Michael by, the sentence stating, "The Service Member shall be solely responsible for any SBP premiums that may have been delinquent prior to the entry of this Divorce Decree, if any." (Emphasis in original.) As noted above, there is no evidence that Michael enrolled Suzanne in the SBP prior to entry of the Divorce Decree or that there were or will be any SBP premium payments due prior to entry of the Divorce Decree.

### 3.

■ There is some merit to Michael's disagreement with the sentence in subsection 5.b of the Divorce Decree that "[t]he Service Member has agreed not to merge his retired pay with any other pension, nor to waive any portion of his retired pay in order to receive disability pay." First, Michael did not agree to this. Second, the coverage of the sentence is excessive to the extent it applies to Michael's sixty-five percent share of his retired pay. Suzanne has an interest only in her *Linson v. Linson*, 1 Haw.App. 272, 618 P.2d 748 (1980) thirty-five percent share of Michael's retired pay. The remaining sixty-five percent belongs to Michael. The challenged sentence must be amended in the spirit of the sentence that follows it, to wit: "[Michael] has further agreed not to pursue any course of action, which would defeat, reduce or limit the Former Spouse's right to receive her share of the Service Member's retired pay as ordered herein."

---

**9.** It may be that the amount of Survivor Benefit Plan (SBP) premiums deducted from retirement payments to Michael will not be taxable to Michael. If so, reimbursements of SBP premiums to Michael may be taxable to Michael.

**4.**

■ Michael's disagreement with the pro-. vision in subsection 5.b stating that he has agreed to indemnify Suzanne for any breach of his duty to pay Suzanne her *Linson* share of his military retirement by paying her the difference caused by breach is without merit. In his response to Suzanne's proposed decree, Michael expressly did not object to the generally applicable indemnification provision. This specific indemnification provision is a reasonable, nonsubstantive enforcement provision.

**5.**

There is no merit to Michael's disagreement with the provision in subsection 5.b pertaining to "a constructive trust." This provision is a reasonable, nonsubstantive enforcement provision.

**6.**

■ There is merit to Michael's disagreement with the provisions in subsection 5.b pertaining to the family court's retention of jurisdiction and continuing jurisdiction and the family court's ability to re-characterize the division of any retirement award as alimony. As noted above, Michael stated the following disagreements with Suzanne's proposed decree: "[Michael] does not, however, agree with many of the provisions included in [Suzanne's] proposed Decree/Position Statement which, ... third, vest permanent personal jurisdiction in the State of Hawaii, ... fourth, that permit the court to re-characterize the retirement obligation as one of alimony[.]"

The issues resulting from those disagreements were never settled. When the parties stated their settlement agreement on the record, nothing was said about the subject matters of Michael's "third" and "fourth" disagreements.

**7.**

■ As noted in the January 5, 2001 "Pretrial Order No. 1" and in section 9 of the Divorce Decree, neither of the parties owned any real property. Michael's disagreement with the first paragraph of section 10 of the Divorce Decree awarding any personal property not specifically dealt with therein (disclosed or not) to the person in possession is without merit.

In his response to Suzanne's proposed decree, Michael agreed that each party should be awarded the clothing and personal effects and household goods and effects in his or her possession and/or control, and the insurance on his or her life, but expressly stated the following disagreement: "'*SEPARATE PROPERTY/RELEASE*'. [Michael] objects to this provision as it awards property without the other party having any knowledge of its existence or identity. The awarded property should be specified and should consist of those things which each party discloses." However, after a "Motion to Set Conference" attended by the attorneys for both parties, the court's January 5, 2001 "Pretrial Order No. 1" noted that there was no dispute regarding the division and distribution of any personal property other than "retirement." This fact explains why the settlement agreement stated on the record was silent regarding personal property other than retirement.

Moreover, in the parties' "agree[ment] to resolve this divorce[,]" the parties did not "specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders[.]" HRS § 580–56(a) (1993). Therefore, pursuant to that statute, by their agreement to resolve this divorce, the parties agreed to "finally divide the property of the parties" as stated in the first paragraph of section 10 of the Divorce Decree.

■ Michael's disagreement with the "release, hold harmless and discharge" second paragraph of section 10 has merit. Nothing in the record, precedent or statutes, authorized the family court to insert this paragraph into the Divorce Decree.

**8.**

■ Michael's disagreement with subsection 13.c of the Divorce Decree dealing with the situation where one party files bankruptcy and in doing so deprives the other party of property or benefits conferred by the Divorce Decree is without merit. To the extent

that it is relevant and enforceable, this is a reasonable, nonsubstantive enforcement provision.

## CONCLUSION

Accordingly, we vacate the following parts of subsection 5.b of the Divorce Decree:

b) *Defendant's Military Retirement.* As soon as allowed by law, Defendant (hereinafter referred to as "Service Member") shall irrevocably enroll in the Survivor's Benefit Plan electing the highest level of basic allowable benefits thereunder, and he shall irrevocably designate Plaintiff as the beneficiary of said benefits, for so long as Plaintiff (hereinafter referred to the "Non–Service Member") shall live.

The Service Member shall continue his enrollment in the Survivor's Benefit Plan **(hereinafter referred to as "SBP")** and he shall designate the Non–Service Member as the beneficiary of said benefits, for so long as the Non–Service Member shall live.

**The Non–Service Member is elibigle [sic] for the SBP coverage and, should she so elect it, the Service Member shall have the SBP premiums automatically deducted from his entire retired/retainer benefit to realize a tax savings for both parties. The Non–Service Member shall be responsible for the cost of her premiums for said SBP benefits, and shall reimburse the Service Member directly upon his presentation of proof of payment of said SBP premiums. The Non–Service Member's reimbursement of said premiums shall commence upon her receipt of the first payment she receives from the Service Member's retirement. The Service Member shall be solely responsible for any SBP premiums that may have been delinquent prior to the entry of this Divorce Decree, if any.**

(Emphases in original.) We remand for the insertion of replacement language consistent with this opinion.

We vacate the following sentence in subsection 5.b of the Divorce Decree: "The Service Member has agreed not to merge his retired pay with any other pension, nor to waive any portion of his retired pay in order to receive disability pay." We remand for the insertion of replacement language consistent with this opinion.

We vacate the following parts of subsection 5.b of the Divorce Decree:

The Family Court shall have continuing jurisdiction to enforce the trust, and make all orders necessary to implement the trust.

The Court shall retain jurisdiction over the Service Member's military retired/retainer pay for so long as the parties both shall live. The Court shall also have the authority to make every just and equitable order not inconsistent with the other provisions herein, and not inconsistent with the Uniformed Services Former Spouses' Protection Act, as amended, or any other applicable law. The Court shall also have specific authority to make any orders it deems just and equitable as a result of the income tax consequences which flow from the division and distribution of the retired/retainer pay.

The Court shall also have continuing jurisdiction to make every order reasonably necessary to implement and accomplish the direct payment to the Non–Service Member by the Service Member or, if permitted by law, the United States Government, of her percentage share of the Service Member's military retired/retainer pay, including the right to advise the Service Member or the United States Government of the precise amount or percentage of the Service Member's disposable military retired/retainer pay to be payable to the Non–Service Member.

The Family Court of the First Circuit shall retain jurisdiction over all of the matters as described in this section so as to insure the full completion of and compliance with the provisions of this agreement ongoing for so long as the parties both shall live. This shall include retention of personal jurisdiction over both the parties hereto as well as retention of ongoing subject matter jurisdiction over the retirement plan(s), and both the parties hereto irrevocably consent to same. This shall specifically include but not be limited to making

any amendments to the provisions contained herein which may be required by the administrators of the Retirement Plan(s) described herein as a pre-requisite to commencing payment of benefits due to the Non–Service Member. Any such amended orders shall be deemed to be in the nature of enforcement proceedings as opposed to subsequent property division. The Court shall also have the authority to make every just and equitable order not inconsistent with the other provisions herein, and not inconsistent with any other applicable law. The Court shall also have specific authority to make any orders it deems just and equitable as a result of the income tax or other consequences which flow from the division and distribution of the retirement pay. Furthermore, this retention of jurisdiction by the Family Court of the First Circuit shall include but not be limited to the Court's ability to recharacterize the division of any retirement awards which are initially made in favor of a Non–Service Member but which are not ultimately received by the said Non–Service Member; or which are not honored, paid or enforced by the Service Member and/or his retirement plan, and/or said plan's administration. The said recharacterization may include but not be limited to the Court's ability to ex post facto either: enter an award of alimony and/or to order the reconfiguration or reallocation of other assets so as to place the Non–Service Member in a position equal to that she would have been if she actually received her retirement share as originally ordered.

We vacate the following section 10 of the Divorce Decree:

10. *Separate Property/Release.* ...

Except as may be otherwise herein provided, both Plaintiff and Defendant do hereby fully release, hold harmless and discharge one another of and from all claims which either of them may have, or at any time may claim against the other; including but not limited to any and all claims and/or demands of every kind and character whatsoever which either party may have had, or may have as of this date, against one another whether growing out of their relationship as Husband and Wife or otherwise. This mutual release includes any and all claims by either party in and/or to any money, property right or interest of value of any nature whatsoever now or hereafter owned or acquired by the other party.

In all other respects, we affirm.